**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

    -against-

**ALEXANDRA BLISS a/k/a Bliss Alexandra**,

    *Defendant*.

**DOCKET NO:**
**1:05-cr-541**
**(FJS)**

### MEMORANDUM OF LAW

**JAMES E. LONG, ESQ.**
**Attorney for Bliss Alexandra**
Federal Bar Roll: #509868
668 Central Avenue
Albany, New York  12206
(518) 458-2444

TO:   **HON. LAWRENCE BAERMAN**
     Clerk, United States District Court
     James Hanley Federal Building
      U.S. Courthouse
     100 S. Clinton Street
     Syracuse, New York

     **JOHN DUNCAN, ESQ.**
     Assistant United States Attorney
     U.S. Courthouse
     Syracuse, New York

The issue before the court is whether the Federal Bureau of Prisons at the Federal Medical Center, Carswell in Fort Worth, Texas should be allowed to forcibly medicate the defendant to *restore* her mental health so that she is competent to stand trial under the United States Supreme Court decision enunciated in *Sell v. United States,* 539 U.S. 166, 179, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003).

The Bureau of Prisons has requested the court for permission to forcibly medicate the defendant. They also admit that she is not a danger to herself or others and that there are potentially fatal side effects (albeit rare) to these medications.

*Sell* establishes a four-part test for determining whether a defendant may be forced to take antipsychotic medication.

First, a court must find that *important* governmental interests are at stake." *Sell,* 539 U.S. at 180, 123 S.Ct. 2174 (emphasis in original).

"Second, the court must conclude that involuntary medication will *significantly further* those concomitant ... interests." *Id.* at 181, 123 S.Ct. 2174 (emphasis in original).

"Third, the court must conclude that involuntary medication is *necessary* to further those interests. The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Id.* (emphasis in original).

Fourth,... the court must conclude that administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition." *Id.*

*Sell* did not prescribe the standard the government must meet in establishing each of these four elements.  In *United States v. Gomes,* 387 F.3d 157 (2d Cir.2004), the Court of Appeals endorsed a requirement that the government prove its case by clear and convincing evidence. *See id*. at 160.

**Important Government Interest**

In response to the first test, surely the Government cannot say that there is an *important* government interest at stake.  The Government waited 5 years and 11 months to bring the charges contain in this indictment.   If there was a serious government interests in prosecuting the defendant these charges would have been brought more expediously.

The indictment charges one, Alexandra Bliss a/k/a Bliss Alexander, in a multiple count charging instrument with 29 counts of violating 26 U.S.C.§ 7206(1) and one count of violating 26 U.S.C.§ 7212 (a). The 8300's were all mailed on December 22, 1999 and received by the IRS  in February 2000.

The defendant was born Darlene Zelenkie at Troy, New York on July 9, 1944.  She married Norman Early of Troy, New York  in 1975. Norman Early died of kidney disease in 2002.  On or about 1998 or 1999  Darlene Early began to use the pen name of Bliss Alexandra and authored a self-help book about New York

3

divorce. She filed documents with the Albany County Clerk's office reflecting her adoption of the name Bliss Alexandra.

Count 30 of the indictment alleges "corruptly endeavoring to obstruct and impede" the Internal Revenue Service.

The defendant is accused of falsifying IRS forms 8300 and thereby corruptly impeding the IRS in its official functions. An examination of the forms (previously attached to Defendant's omnibus motion), shows that the sender of these forms to the IRS altered the forms so substantially that they could not be considered 8300 forms. The sender did not include the social security numbers of any of the people identified as conducting these transactions. These forms were nothing more than a nuisance to the IRS and caused little or no harm to the alleged "victims".

The 5 year and 11 month delay in bringing this indictment from the date of mailing the 8300 forms shows how unconcerned the government was in prosecuting these charges.. The statute of limitations of six (6) years expired 23 days after the filing of this indictment.

In a case similar to the one at bar, then District Court Judge Michael Mukasey, in *U.S. v. Lindauer* 448 F.Supp.2d 558 S.D.N.Y.,2006 stated:

"The Supreme Court's focus in *Sell* on standards for coercing antipsychotic medication , the Court does acknowledge the principle, arising from the Court's own precedents, "that an individual has a constitutionally protected liberty 'interest in avoiding involuntary administration of antipsychotic drugs'-an interest that only an 'essential' or 'overriding' state interest might overcome." *Sell,* 539 U.S.

4

at 178-79, 123 S.Ct. 2174, (quoting *Riggins v. Nevada,* 504 U.S. 127, 134, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992)). Such an essential or overriding interest was found, for example, in *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), where the Court permitted forcible administration of drugs "to inmates who are ... gravely disabled or represent a significant danger to themselves or others." 539 U.S. at 226, 123 S.Ct. 2297."

Judge Mukasey went on to say that when such interests are absent, as they are here and were in his case, that the court consider why is it medically appropriate to forcibly administer antipsychotic drugs to an individual who (1) is *not* dangerous *and* (2) is competent to make up his own mind about treatment?

The question is then can bringing such an individual to trial *alone* justify in whole (or at least in significant part) administration of a drug that may have adverse side effects, including side effects that may to some extent impair a defense at trial? Judge Mukasey held it does not. This writer respectfully submits there is no reasons to force medicate the defendant simply to bring her to trial.

The standard for determining whether to forcibly medicate a detainee for the sole purpose of rendering him competent for trial is greater than the standard for medicating a detainee who poses a significant danger to himself or others.

The test for determining competency to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him. 18 U.S.C.A. § 4241.

The defendant as a pretrial detainee facing the possibility of involuntary administration of medication possesses a significant liberty and privacy interest in avoiding the unwanted administration of drugs under the Due Process Clause of the Fifth Amendment. *Washington v. Harper,* 494 U.S. 210, 222, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *United States v. Charters,* 863 F.2d 302, 305 (4th Cir.1988); *United States v. Morgan,* 193 F.3d 252, 260-61 (4th Cir.1999).

The defendant's actions in attempting to interfere with administration of the Internal Revenue Service were not performed with the intention to secure unlawful benefit for herself or another, and mere evidence of improper motive or bad or evil purpose is insufficient. *U.S. v. Hanson*, (C.A.9 ) 1993, 2 F.3d 942. Absolutely no reading of the indictment and the facts presented to the grand jury allege that the defendant intended to secure an unlawful benefit for her or another.

What then is the United States of America's interest I bringing a 64 year old widow to trial, after forcibly medicating her which may or may not render her competent to assist her trial defense, either as a *pro se* litigant or through defense counsel?

**Side Effects**

The Due Process clause allows the government to involuntarily administer medication to a pretrial detainee in order to render him competent to stand trial, but only if the treatment is 1) medically appropriate, 2) substantially unlikely to have side effects that may undermine the fairness of the trial, and 3) necessary to

further important trial related interests of the government. *Sell v. United States,* 539 U.S. 166, 179, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). For the court to establish that involuntary medication will significantly further the governmental interests, it must find that the administration of the medication will likely render the defendant competent to stand trial. *Id.* at 181, 123 S.Ct. 2174.

The reports before the court do not establish that the defendant will be any more competent to assist in her defense and more importantly point out significant side effects that cause more harm than good.

The court must also find that the medication is not likely to cause side effects which may interfere with the defendant's ability to assist counsel in creating a defense or otherwise with the fairness of the trial. *Id.* The Supreme Court stressed the necessity of having an important governmental interest at stake and the responsibility of the courts to evaluate the individual facts of each case. *Id.* at 180, 123 S.Ct. 2174.  The facts in this case cry out for termination of the prosecution.  Since the Due Process Clause of the Fifth Amendment prohibits courts from trying and convicting mentally incompetent defendants. *Drope v. Missouri,* 420 U.S. 162, 171-72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 384-86, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *United States v. Mason*, 52 F.3d 1286 (4th Cir.1995).

The test for determining competency is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... and whether he has a rational as well as a factual understanding

of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 403, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Walton v. Angelone,* 321 F.3d 442, 459 (4th Cir.2003). The medications will not accomplish this goal. The defendant's condition has only worsened since her arrest and forced hospitalization. Are we now to force medicate her to bring her back to the Northern District of New York to stand trial for a nuisance crime? First it will not bring her "back" as she is a firm believer that what she did was not criminal in nature. She was attempted , albeit ridiculously, to state a claim for damages through the total misuse of the 8300 forms. She had no corrupt and malicious motive, just misguided and disturbed ideation. Now the Government wants to force medicate her?

The determination of whether a defendant is mentally competent to stand trial is a question left to the sound discretion of the district court, with the advice of psychiatrists. *Dusky,* 362 U.S. at 403, 80 S.Ct. 788;*Newfield v. United States,* 565 F.2d 203, 206 (2d Cir.1977). The medical opinion of experts as to the competency of a defendant to stand trial is not binding on the court, since the law imposes the duty and responsibility for making the ultimate decision of such a legal question on the court and not upon medical experts. Although the court may consider a defendant's history of psychiatric treatment in making its decision as to her competency, awareness of such history does not automatically require a finding of incompetence. "It does not follow that because a person is mentally ill he is not competent to stand trial." *United States v. Adams,* 297 F.Supp. 596, 597 (S.D.N.Y.1969).

## CONCLUSION

When the Government lacks strong interest in pursuing trial of a defendant found incompetent to stand trial on charge of this nature, involuntary medication should not be used to restore defendant's competency. It may well not and the side effects are more likely to harm than help.

I cannot help but repeat myself, what is the point of trying a 64-year-old widow who is delusional and misused IRS forms to state a claim when her very mental illness is a defense to the charges?

Dated: April 24, 2008

Respectfully Submitted
s/electronically
**JAMES E. LONG, ESQ.**
**Attorney for Defendant** Bar Roll No. 506898

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .